MARTIN H. KRESSE (SB # 48132)
RICHARD A. CANATELLA (SB # 53264)
Cotter & Del Carlo
4610 Mission Street, Suite 203
San Francisco, CA 94112
415 584-5446
415 584-5447 FAX

Attorneys for Plaintiff Richard A. Canatella

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD A. CANATELLA,<br><br>　　　　Plaintiff,<br>v.<br><br>RONALD W. STOVITZ, Presiding Judge of the State Bar Court, San Francisco; JUDITH A. EPSTEIN, Review Judge, San Francisco; MADGE S. WATAI, Review Judge, Los Angeles; RICHARD A. HONN, Hearing Judge, Los Angeles; PATRICE E. McELROY, Hearing Judge, San Francisco; ALBAN I. NILES, Hearing Judge, Los Angeles; JOANN M. REMKE, Hearing Judge, San Francisco; ROBERT M. TALCOTT, Supervising Hearing Judge, Los Angeles; JAMES E. HERMAN, President of the Board of Governors of the State Bar of California; MICHAEL NISPEROS, JR., Chief Trial Counsel,<br><br>　　　　Defendants.<br>_____/ | No. C 00 - 1105 JSW<br><br>**REPLY TO OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS' COUNSEL SHOULD NOT BE DISQUALIFIED; REQUEST FOR JUDICIAL NOTICE; EXHIBIT "A" TO REQUEST; PROOF OF MAIL SERVICE**<br><br>Hearing: February 20, 2004<br><br>Time: 9:00 a.m.<br><br>Courtroom: 2, 17th Flr<br><br>450 Golden Gate Avenue<br>San Francisco CA 94102 |

**REPLY TO OPP TO SHOW CAUSE, etc.**

# TABLE OF CONTENTS

I. SUMMARY OF PLAINTIFF'S STANDING TO DISQUALIFY DEFENDANTS' COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. THE ADMITTED ETHICAL VIOLATIONS ARE "'MANIFEST AND GLARING". . . . . 2

III. ACTUAL CONFLICTS ARISE FROM PAYMENT OF THE JUDGES ATTORNEYS FEES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. A *POTENTIAL* CONFLICT STEMS FROM A POSSIBLE STATUTORY AWARD OF ATTORNEY'S FEES TO PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. ASSUMING *ARGUENDO* THAT CALIFORNIA LAW AUTHORIZES THE BAR'S PAYMENT OF DEFENDANTS' ATTORNEYS FEES, IT IS INCONSISTENT WITH THE FIRST AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**A. PAYMENT OF DEFENDANTS' ATTORNEYS FEES FUNDS AN ACTIVITY OF AN IDEOLOGICAL AND POLITICAL NATURE.** . . . . . . . . . . . . . . 8

**B. THIS CASE IS CONTROLLED BY *UNITED FOODS*.** . . . . . . . . . . . . . . 12

VI. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## Cases

*Brotsky v. State Bar*, 57 Cal. 2d 287, 300-301 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Colyer v. Smith,* 50 F.Supp.2d 966, 971 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . 2

*Decaview Distrib. Co. v. Decaview Asia Corp.*, 2000 U.S. Dist. LEXIS 16534, 2000 WL 1175583 (N.D.Cal. Aug. 14, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Attorney Discipline System*, 19 Cal. 4th 582, 598-599 (1998) . . . . . . . . . . . . . . . 5

*In re Rose*, 22 Cal. 4th 430, 438 and n. 4 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kasza v. Browner,* 133 F.3d 1159 (9" Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Keller v. State Bar of California*, 496 U.S. 1, 14 (1990) . . . . . . . . . . . . . . . . . . . . . . . 2

*Lathrop v. Donohue*, 367 U.S. 820 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 516 (1991) . . . . . . . . . . . . . . . . . . . . 10

*Schultz v. State Bar* (1975) 15 Cal.3d 799, 802 - 803 . . . . . . . . . . . . . . . . . . . . . . . . 3

Constitutions, Statutes and Rules

42 U.S.C. § 1983 ........................................................... 8

Cal. Bus. & Prof. Code, § 6068(d) ........................................... 3

Cal. Bus. & Prof. Code, §§ 6087, 6100 ....................................... 6

Cal. Const. Art. VI, §§ 9 .................................................. 5

Cal. Const., Art. VI, section 1 ............................................ 5

Cal. Gov't Code, § 811.2 ................................................... 5

Cal. Gov't Code, § 811.4 ................................................... 6

Cal. Gov't Code, § 811.9 ................................................... 13

Cal. Gov't Code, § 811.9 ................................................... 7

Cal. Gov't Code, § 995.4 ................................................... 6

Cal. Gov't Code, § 995.4(a)(3) ............................................. 7

Cal. Rule of Prof. Conduct ("CRPC") 3-310 (C) .............................. 3

California Government Code section 995 ..................................... 4

Civil Rights Attorney's Fees Awards Act of 1976 ............................ 7

Code of Judicial Conduct, Canon 4(D)(5) .................................... 3

Fed.R.Evid. 201(d) ......................................................... 3

Other Authorities

80 Op. Atty Gen. Cal. 174 .................................................. 7

**I. SUMMARY OF PLAINTIFF'S STANDING TO DISQUALIFY DEFENDANTS' COUNSEL.**

The issue presented is whether Plaintiff has standing on this motion to disqualify Defendants' counsel on the basis of "glaring" ethical violations, or "injury in fact" and a "personal stake" in the motion.

Plaintiff's principal contention is that defense counsel's representation of eleven (11) individual Defendants including eight (8) State Bar Court judges violates Cal. Rules of Professional Conduct 3-310(C), absent full disclosure and the clients' informed *written* consent. First, defense counsel represent at least one bar judge without that judge's knowledge or informed written consent. This is a "glaring" ethical violation if not a disciplinable offense. Also, Code of Judicial Conduct, Canon 4(D)(5) prohibits the Bar judges from accepting representation and payment of their attorneys fees by the State Bar, because the State Bar regularly appears before the judges in all discipline proceedings. This is another "glaring" ethical violation.

Rule 3-310(C) requires a potential or actual conflict. Here, there is an *actual* conflict based on the Bar's payment of Defendants' attorneys fees, as well as the Bar judges' acceptance of representation and payment of their fees by the Bar. There is also a *potential* conflict based upon an attorney's fee award to Plaintiff's counsel should Plaintiff prevail because it is not clear who be responsible for payment, the Bar or Defendants.

Plaintiff can also show "injury in fact" and a "personal stake" in the motion stemming from the Bar's admitted payment of Defendants' attorneys fees to Remcho. The payment violates the First Amendment prohibition against any requirement that Plaintiff (or any other member of the bar) pay money for Remcho's defense of Defendants because they do not wish to endorse the speech let alone buy it.

**REPLY TO OPP TO SHOW CAUSE, etc.**                                   1

Compelled payment of Defendants' attorney's fees forces members of the Bar to fund activities which are not "germane" to the Bar's "central purpose" of regulating the legal profession and improving the quality of legal services. *Keller v. State Bar of California*, 496 U.S. 1, 14 (1990). Rather, payment of Remcho's attorneys fees furthers the State Bar's ideological viewpoint, namely, that the discipline provisions Plaintiff challenges do not have a chilling effect on constitutionally protected advocacy. Thus, Plaintiff has standing to move for disqualification.

**II. THE ADMITTED ETHICAL VIOLATIONS ARE "'MANIFEST AND GLARING".**

Defendants' principal argument is that "Canatella lacks standing to move to disqualify Defendants' counsel." **See Defendants' opposition ("Opp.") at 2:21-5:5.** Defendants correctly state the general rule that courts do not disqualify an attorney for conflict unless the client moves for disqualification. *Colyer v. Smith,* 50 F.Supp.2d 966, 969, 971 (C.D. Cal. 1999) ("The majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client," *citing Kasza v. Browner,* 133 F.3d 1159, 1171 (9" Cir. 1998), (quoting in turn *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir.1993) (quoting in turn *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th. Cir.1976)). Accordingly, they reason that "Plaintiff does not contend that he is a current or former client of defense counsel, and therefore under the majority view, he lacks standing to move to disqualify defense counsel in this case." **Opp. at 2:26-28.** Defendants err, however, by their own concessions.

First, Defendants concede that an exception to the general rule applies in cases where the ethical violation was "'manifest and glaring' or 'open and obvious and confronted the court with a plain duty to act.'" *Colyer*, 50 F. Supp. 2d at 969 (citing *Yarn*

**REPLY TO OPP TO SHOW CAUSE, etc.** 2

*Processing*, 530 F.2d at 89); *Decaview Distrib. Co. v. Decaview Asia Corp.*, 2000 U.S. Dist. LEXIS 16534, 2000 WL 1175583 (N.D.Cal. Aug. 14, 2000). But they attempt to deflect the force of the concession by the argument that "there is no ethical violation at all here, much less one that is glaring." **Opp. at 3:13-14.** The attempt fails because as a matter of law the ethical violation is "'manifest and glaring' or 'open and obvious,'" *see Colyer*, 50 F. Supp. 2d at 969. **See Plaintiff's memorandum at 4:20-5:17.** Defendants' counsel admittedly purport to represent clients without (at least in the case of Judge Honn) their knowledge or informed written consent! Such conduct violates Cal. Rule of Prof. Conduct ("CRPC") 3-310 (C), and may even subject defense counsel to discipline. *See*, e.g., *Schultz v. State Bar* (1975) 15 Cal.3d 799, 802 (attorney filed federal complaint without express consent or authority of plaintiff); Cal. Bus. & Prof. Code, § 6068(d) (misleading "judge or any judicial officer" by "artifice or false statement of fact or law").

Also "glaring" is the Bar judges' acceptance of representation and the Bar's payment of their legal fees in this action pursuant to a "retainer agreement with the Remcho firm." **See Request for judicial notice.**[1] The Code of Judicial Conduct prohibits payment of the Bar judges' attorneys fees by a party (the State Bar) regularly appearing before the judges. Code of Judicial Conduct, Canon 4(D)(5) prohibits a judge from accepting a benefit, gift, or favor from any party who has, is or will come before him or her. The Canon directs judges not to accept gifts from parties interested in matters likely to come before the judge, and provides "under no circumstance" should

---

[1] Plaintiff requests the Court take judicial notice of Mr. Goldman's letter dated January 26, 2004, to Bradford E. Henschel. The Court should take judicial notice where a party requests it and supplies the court with information sufficient to satisfy the standard under Evidence Rule 201. Fed.R.Evid. 201(d).

**REPLY TO OPP TO SHOW CAUSE, etc.** 3

such gifts be accepted. *Id.*[2] Since the State Bar prosecutors appear before those Judges in every case in the State Bar Court, each of the State Bar Court Judges violate Canon 4(D)(5) by having the State Bar pay their attorneys fees.

Moreover, as officers in the Judicial Branch of Government, judges of the Bar Court have an affirmative duty to bring these violations to the attention of the State Bar which they have not done. Because the OGC admits that the Bar has a retainer agreement with Remcho, **see exhibit "A" to request for judicial notice**, and has paid (or is paying) for Remcho's representation of the State Bar Court judges, a prima facie violation of Canon 4(D)(5) is established. Accordingly, disqualification is necessary to prevent the Bar from undermining public confidence with questionable expenditures, from cooperating in a violation of ethics with OGC and Remcho, and from participating in a conflict that requires the State Bar to investigate their own lawyers for ethical violations. Therefore, if this case does not implicate "'manifest and glaring' or 'open and obvious,'" *see Colyer*, 50 F. Supp. 2d at 969, that standing exception is devoid of meaning.

**III. ACTUAL CONFLICTS ARISE FROM PAYMENT OF THE JUDGES ATTORNEYS FEES.**

Defendants argue that "California Government Code section 995 requires that the State Bar 'provide for the defense of any civil action or proceeding' against an employee based on his or her acts or omissions in the scope of his or her public employment," and there is thus "no misuse of public funds" in the Bar hiring Remcho to

---

[2] Canon 4.D(5) provides in full: "Under no circumstances shall a judge accept a gift, bequest or favor if the donor is a party whose interests have come or are reasonably likely to come before the judge. A judge shall discourage members of the judge's family residing in the judge's household from accepting similar benefits from parties who have come or are reasonably likely to come before the judge."

REPLY TO OPP TO SHOW CAUSE, etc.                              4

represent Defendants.  **Opp. at 6:27-7:1;** *see also* **exhibit "A" to request for judicial notice, *infra*.**  Defendants err because section 995 does not apply.

Section 995 states that a "public entity ... shall provide for the defense of any civil action or proceeding brought against [a public employee]." *Id.*  The section applies to "an employee or former employee," of "a public entity." *Id.*  However, the State Bar is not a "public entity" under Cal. Gov't Code, § 811.2, providing that "'Public entity' includes the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State.'" *Id.*  The State Bar is none of these.

Rather, the State Bar is a constitutional entity, placed within the judicial article of the California Constitution, and thus expressly acknowledged as an integral part of the judicial function.  (Cal. Const. Art. VI, § 9; *In re Attorney Discipline System*, 19 Cal. 4th 582, 598-599 (1998).) " ' "We have described the bar as 'a public corporation created . . . as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.]  In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court, which nonetheless retains its inherent judicial authority to disbar or suspend attorneys. [Citations.]" [Citations.]' " (*In re Attorney Discipline System*, *supra*, 19 Cal. 4th at pp. 599-600.)[3]

Nor is the State Bar Court an ordinary administrative agency.  "[The State Bar Court] is not an administrative board in the ordinary sense of the phrase.  It is *sui*

---

[3] The State Bar Court, however, is not itself a judicial court established by article VI. *See* Cal. Const., Art. VI, section 1, stating: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts. All courts are courts of record." *In re Rose*, 22 Cal. 4th 430, 438 and n. 4 (2000).

**REPLY TO OPP TO SHOW CAUSE, etc.**                                5

*generis*. . . . [¶] . . . [I]n matters of discipline and disbarment, the State Bar [Court] is but an arm of this court, and . . . this court retains its power to control any such disciplinary proceeding at any step. [Citation.]" (*In re Rose*, supra, 22 Cal. 4th at 439, citing *Brotsky v. State Bar*, 57 Cal. 2d 287, 300-301 (1962); see also *In re Attorney Discipline System*, *supra*, 19 Cal. 4th at p. 599 [State Bar is not in the same class as state administrative agencies placed within the executive branch].)  In creating the State Bar and the State Bar Court, the Legislature expressly acknowledged that the Supreme Court retains all disciplinary authority the court had prior to the passage of the State Bar Act.  Cal. Bus. & Prof. Code, §§ 6087, 6100.  The State Bar may make only recommendations to the Supreme Court, which undertakes an independent determination whether the attorney should be disciplined as recommended.  *In re Rose, supra,* at 439*, citing In re Attorney Discipline System*, *supra*, 19 Cal. 4th at pp. 600-601; *In re Shattuck*, 208 Cal. 6, 12, 279 P. 998 (1929).  This limitation upon the State Bar's authority distinguishes the State Bar Court from other quasi-judicial or administrative agencies rendering initial *decisions*-- rather than *recommendations*--that subsequently may be reviewed by courts of record. *In re Rose, supra,* at 439.  Hence, Defendants are not "public employees" within Cal. Gov't Code, § 811.4, defining "public employees" as "employee(s) of a public entity."  *Id.*

Assuming *arguendo* Defendants are public employees, they ignore Cal. Gov't Code, § 995.4, providing that a  "public entity" "may refuse to provide for the defense of a civil action or proceeding brought against an employee or former employee if the public entity determines any of the following:

> (3) The defense of the action or proceeding by the public entity would create a specific *conflict of interest* between the public entity and the employee or former employee. For the purposes of this section, "specific conflict of interest" means a conflict of interest or an adverse or pecuniary interest, as specified by statute or by a rule or regulation of the public entity....

**REPLY TO OPP TO SHOW CAUSE, etc.** 6

Cal. Gov't Code, § 995.4(a)(3) (emphasis added).

This disqualification motion is squarely based on allegations that an *actual* "conflict of interest or an adverse or pecuniary interest," arises from the Bar judges' acceptance and the State Bar's payment of their attorneys fees to Remcho.   In such circumstances the State Bar judges must hire their own counsel.  See 80 Op. Atty Gen. Cal. 174, 1997 Cal. AG LEXIS 38 at 4 (1997) ("If, because of a declared conflict of interest, any judge, who is otherwise entitled to representation pursuant to [Cal. Gov't Code] Section 825, 995, or 27647, is required to retain his own counsel, such judge is entitled to recover from the appropriate public entity such reasonable attorney's fees, costs, and expenses as were necessarily incurred thereby." (citing Cal. Gov't Code, § 27648).

Finally, even if the Bar judges are "state officers" entitled to a public defense, *see* Cal. Gov't Code, § 811.9, "[t]he Judicial Council shall provide for such representation or defense through the county counsel, the Attorney General, or other counsel...." *Id.* Therefore,  the *actual* "conflict of interest" exception precludes payment of Remcho's fees under § 995, and that firm cannot represent any of the Defendants at the expense of the State Bar.

**IV. A *POTENTIAL* CONFLICT STEMS FROM A POSSIBLE STATUTORY AWARD OF ATTORNEY'S FEES TO PLAINTIFF.**

Defendants do not dispute that at this point in the litigation attorney's fees *may potentially* be awarded Plaintiff under Title 42, sec. 1988 of the United States Code, as amended by the Civil Rights Attorney's Fees Awards Act of 1976.  That section provides that a court, in its discretion, may allow reasonable attorney fees as part of the costs to prevailing parties in actions brought under 42 U.S.C. sec. 1983.  Since this is undisputedly a section 1983 action, there is at least a *possibility* that Plaintiff could be

**REPLY TO OPP TO SHOW CAUSE, etc.**                                         7

awarded his attorney's fees, and someone, either the individual Defendants or the State Bar, would be obligated to pay.

Defendants' principal argument is there can be no *potential* conflict because the individual Defendants are sued *only* in their official capacity and therefore have no personal exposure." **Opp. at 6:2-4.** They specifically argue that "the State Bar defendants in this action are sued only in their official capacities and only for prospective injunctive relief to prevent enforcement of state laws and rules that prohibit attorneys from filing meritless actions or pleadings." **Opp. at 6:5-7.** Assuming Plaintiff is effectively suing the State Bar and not the individual Defendants, an argument that defense counsel flip-flop as expedient, there is a serious question whether the Bar itself could lawfully pay attorney's fees to Plaintiff on behalf of the individual Defendants. *Defendants do not address this critical issue.* Therefore, absent defense counsel's full disclosure to their clients and the clients' informed *written* consent, as required by Cal. Rules of Professional Conduct 3-310(C), a *potential* conflict surfaces because Defendants cannot know who may be required to pay and what differing desires (with respect to possible payment and pursuit of the litigation and/or settlement) they may hold.

**V. ASSUMING *ARGUENDO* THAT CALIFORNIA LAW AUTHORIZES THE BAR'S PAYMENT OF DEFENDANTS' ATTORNEYS FEES, IT IS INCONSISTENT WITH THE FIRST AMENDMENT.**

**A. PAYMENT OF DEFENDANTS' ATTORNEYS FEES FUNDS AN ACTIVITY OF AN IDEOLOGICAL AND POLITICAL NATURE.**

In 1990, the Supreme Court in *Keller* reaffirmed its earlier conclusion that compelled membership in a state bar association, and the exaction of compulsory dues, do not per se violate an individual's First Amendment rights. *See Lathrop v. Donohue*, 367 U.S. 820 (1961). *Keller* held that "the compelled association and integrated bar is

**REPLY TO OPP TO SHOW CAUSE, etc.**                                   8

justified by the State's interest in regulating the legal profession and improving the quality of legal services."

> The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity. The difficult question, of course, is to define the latter class of activities.

*Id.* at 13-14.[4]

Plaintiff contends that the payment of Defendants' legal fees by the State Bar in this 1983 action involving a First Amendment overbreadth challenge to specific discipline rules does not come within the permissible expenditures for "regulation of the legal profession or the improvement of legal services" under *Keller*. The defense in this case comes very close to the publicity campaign struck down in *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991), a union case. It is noteworthy that the Court in *Keller* established for the first time that the principles it previously had developed for the permissible use of compulsory union dues were equally applicable for the use of

---

[4] The Supreme Court in *Keller* recognized that its limitation on the use of mandatory bar dues was not self-executing and that a difficult problem remained in defining the class of activities germane to "regulating the legal profession and improving the quality of legal services." *Id.* at 13. The Court again found the union context helpful in setting guiding principles, and quoted from its decision in *Ellis v. Railway Clerks*, 466 U.S. 435, 448 (1984): "'When employees such as petitioners object to being burdened with particular union expenditures, the test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit.' We think these principles are useful guidelines for determining permissible expenditures in the present context as well. *Thus, the guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'* *Lathrop* [*v. Donohue*, 367 U.S. 820, 843 (1961) (plurality opinion)]." *Id.* at 14 (emphasis added).

**REPLY TO OPP TO SHOW CAUSE, etc.**                              9

mandatory bar dues.

In *Lehnert*, eight Justices invalidated a teachers' union's use of compelled dues to pay for a public relations campaign.  The Court reviewed the constitutional limitations upon dues to a public sector union that were required as a condition of employment. *See* 500 U.S. at 511.  At issue were six categories of expenditures, some political or ideological and some not. The Court's opinion in *Lehnert* unambiguously stated the test for chargeable activities, whether or not ideological: "Chargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Lehnert*, 500 U.S. at 519 (emphasis added).  The three-part test was adopted by five members of the Court. *See Lehnert*, 500 U.S. at 511. The four dissenting justices in *Lehnert* would have gone even further and allowed employees to be charged only for duties a union is obligated to perform by statute.  *See id.* at 550 (Scalia, J., dissenting). Thus, all nine members of the court have adopted a germaneness test.

Defendants argue that *"Keller* does not prohibit expenditures of mandatory dues monies by the State Bar to defend employees sued in their official capacities against a lawsuit which is intended to invalidate the State Bar's disciplinary system." **See Exhibit "A" to request for judicial notice.**  They err because the challenged expenditures, i.e., payment of Remcho's fees, are *not* "necessarily or reasonably incurred for the purpose of" "regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13-14.  Rather, the defense in this case is by its very nature ideology or suasion as to the criteria by which First Amendment overbreadth doctrine should be applied.  Reasonable minds could not disagree that the defense of Plaintiff's

**REPLY TO OPP TO SHOW CAUSE, etc.**                     10

overbreadth claim is not an expression of a content-neutral commitment to utilize State Bar member funds for legal assistance to the impoverished, for discipline or for improving the administration of justice. Also, expenses of litigation are clearly not germane to the Bar's central purpose.

Here, the defense of Plaintiff's First Amendment overbreadth claim is, by its nature, *ideological* litigation, and State Bar funding of the litigation is, therefore, tantamount to supporting an ideological interest. For it cannot be denied that this litigation, ongoing since 1998, has taken on a political or ideological dimension. Indeed, from Defendants' counsel's *ideological* and *political* point of view, "*Keller* does not prohibit expenditures of mandatory dues monies by the State Bar to defend employees sued in their official capacities against a lawsuit which is intended to invalidate the State Bar's disciplinary system"! **See request for judicial notice and Goldman letter-exhibit "A".** The entire history of this case demonstrates the Bar's ideological and political purpose of denying court access to members' challenges to the discipline rules. *See, e.g., Canatella v. California,* 304 F.3d 843 (9th Cir. 2002).

Finally, where the challenged defense relates *not* to "regulating the legal profession and improving the quality of legal services," *Keller*, 496 U.S. at 13-14, but to Defendants' political and ideological defense of Plaintiff's First Amendment overbreadth claim, the connection to the Bar's associational function as bargaining representative is too attenuated to justify compelled support by objecting attorneys. Accordingly, this Court should conclude that the State Bar may not constitutionally compel its members to subsidize a form of judicial lobbying or other political expression in the guise of litigation defense that is not germane to its central purpose.

**B. THIS CASE IS CONTROLLED BY *UNITED FOODS*.**

This case involves a situation in which the State Bar requires compelled association of attorneys not for a broader regulatory purpose, but only to compel them to fund speech defending Defendants against a First Amendment overbreadth challenge to discipline provisions they are charged with enforcing. *See United States v. United Foods, Inc.*, 533 U.S. 405, 415 (2001) ("There is no broader regulatory program in place here.").

Like the requirement in Cal. Gov't Code, § 995 that the Bar pay Defendants' attorney's fees, the statutory scheme in *United Foods* did not require mushroom handlers to associate together in order to advance a broader regulatory end. Instead, the only collective action mushroom handlers (or in this case attorneys) had with each other was paying a fee to the government. See *United States v. United Foods, Inc.*, *supra,* 533 U.S. at 415. Thus, section 995 does not require group action, any more than the statutory scheme in *United Foods* did, save to generate the very speech to which Plaintiff objects, i.e., defense of "a lawsuit which is intended to invalidate the State Bar's disciplinary system." **See exhibit "A" to request for judicial notice.**

As a result of these differences from Abood and Keller, the Court in *United Foods* was unwilling to uphold "compelled subsidies for speech in the context of a program where the principal object is speech itself." *Id.* The same result should be reached here. This Court should find *United Foods* to be directly on point, since the State of California under Cal. Gov't Code, § 995 purportedly mandates the State Bar "provide for the defense of any civil action or proceeding brought against [Bar employees]." *Id.* In other words, this situation results in attorneys associating themselves together only for the limited purpose of funding and disseminating speech defending Bar judges against a First Amendment overbreadth challenge to several discipline provisions which the

**REPLY TO OPP TO SHOW CAUSE, etc.**                    12

judges routinely enforce, and for which they are required to retain counsel themselves. Cal. Gov't Code, § 811.9.

Unlike *Abood* and *Keller*, the State has not required attorneys in this case to be associated with a larger collective organization that furthers a broad regulatory purpose. Rather, in an integrated Bar attorneys pay money to the Bar, which in turn, uses the money to fund speech that Plaintiff (and perhaps other attorneys) find objectionable. Defendants simply cannot reasonably argue that the compelled contribution to Remcho's speech in payment of Defendants' attorneys fees is germane to the central purpose of regulation. For "were it sufficient to say speech is germane to itself, Abood's and Keller's limits would be empty of meaning and significance." *Id.* at 415.

Like *United Foods*, the expression that the Plaintiff is required to support "is not germane to a purpose related to an association independent from the speech itself." *Id.* No other association, and thus no "overriding associational purpose," exists. Since "it is only [an] overriding associational purpose which allows any compelled subsidy for speech in the first place, *id.* at 413, *Abood's* prohibition on compelled speech applies in this case. Consequently, this court should conclude that section 995's compelled payment provision violates the First Amendment, insofar as it applies to Plaintiff and other objecting members of the State Bar.

///

**VI. CONCLUSION.**

For the reasons expressed, the Court should disqualify OGC and Remcho from further representation in this case.

Dated: February 6, 2004                    COTTER & DEL CARLO

                                           /S/

REPLY TO OPP TO SHOW CAUSE, etc.                    13

| | |
|---|---|
| 1 | |
| 2 | By: Richard A. Canatella |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# PROOF OF SERVICE BY MAIL

I, Michael A. Canatella, declare that I am employed in the City and County of San Francisco, California, and am over the age of eighteen years and am not a party to the within cause; my business address is 4610 Mission Street, #203, San Francisco, California. I am familiar with the business practice for collection and processing of mail. The following documents will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at San Francisco, California on this date addressed as follows:

**DOCUMENTS MAILED:**

**REPLY TO OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS' COUNSEL SHOULD NOT BE DISQUALIFIED; REQUEST FOR JUDICIAL NOTICE; EXHIBIT "A" TO REQUEST; PROOF OF MAIL SERVICE**

**ADDRESSED TO:**

| | |
|---|---|
| MARIE M. MOFFAT, ESQ.<br>LAWRENCE C. YEE, ESQ.<br>JAY M. GOLDMAN, ESQ.<br>Office of the General Counsel<br>The State Bar of California<br>180 Howard Street<br>San Francisco, CA 94105-1639 | MARTIN H. KRESSE<br>Attorney at Law<br>887 Island Drive, Suite 220D<br>Alameda, CA 94502 |

ROBIN B. JOHANSEN, ESQ
REMCHO, JOHANSEN & PURCELL
201 Delores Avenue
San Leandro, CA 94577

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 6, 2004, at San Francisco, California.

/S/
Michael A. Canatella

**REPLY TO OPP TO SHOW CAUSE, etc.**